Carroll,
June 5, 1945. } No. 3526.

GEORGE E. PEARSON, *Adm'r v.* HUGH H. WALLACE.

*Cooper, Hall & Grimes* (*Mr. Cooper* orally), for the plaintiff.

*Ovila J. Gregoire* (by brief and orally), for the defendant.

JOHNSTON, J.   Both parties agree that the only issue with respect to liability is whether the injury from which Mr. Glidden died was an accidental one arising out of his employment.   This resolves itself into the question of whether the blow that resulted in the contusion preceded and was a cause of the cerebral hemorrhage, or whether the latter was induced by natural causes within Walter I. Glidden, and the bump an incident of his loss of control over himself.   If the second of these propositions is correct, any injury did not arise out of the employment by the defendant and is not compensable.   *Guay* v. *Company*, 83 N. H. 392; *Eaton* v. *Proctor*, 85 N. H. 398; *Zwiercan* v. *Company*, 87 N. H. 196; *Ahern* v. *Company*, 88 N. H. 287.

Since the defendant's exceptions present no question relating to the specific findings of the trial Court, the motions to dismiss the petition were properly denied if there is any evidence on which a verdict for the plaintiff could be rendered.   *Bridges* v. *Company*, 85 N. H. 220, 224.

It could be found from the evidence that the decedent's death was due to a blow on the forehead with the weakening of the blood vessels in the brain brought about by the 1933 concussion, and the strain of the work performed August 4, 1943, as contributing causes.   The doctor, who was Mr. Glidden's attending physician at least as far back as the accident in 1933, gave as his opinion that the intracranial hemorrhage was brought on by "the blow he received on the head," that it "would cause weakened blood vessels of that type to rupture," and that the physical exertion required to install the tank that the deceased put in place "would be a contributing cause in the case of Walter Glidden to the condition which led to his death."   This expert testified that Mr. Glidden did not have malignant hypertension because of various facts: it is uncommon in a person of his age; there were no symptoms of such prior to the accident; the diastolic blood pressure when first taken in the hospital was 90 rather than 110 or 120; and finally the paralysis on the right side did not precede the contusion over the left eye because of the probabilities that they both would have been on the same side.   One of the medical experts

for the defendant testified that the commonest cause of an intracranial hemorrhage in a young man is the rupture of a minute aneurysm but this is "associated with high blood pressure." Moreover, it is fair to assume that the plaintiff's doctor had this in mind when he testified that the blow caused the cerebral hemorrhage. From weighing the conflicting medical and other testimony, it would not be unreasonable to find that it was more probable than otherwise that the blow preceded and was a cause of the intracranial hemorrhage. The plain contusion with no abrasions on the face was not such as would have come from the fall on the driveway and some other cause was indicated.

Chapter 216 of the Revised Laws, which fixes the compensation to which the plaintiff is entitled, is silent as to interest. Under these circumstances, it has been held that the general statute on this subject applies. *Hatfield* v. *Higgins*, 108 Ind. App. 681; *Sunny Point Packing Co.* v. *Faigh*, 63 F. (2d) 921, and cases cited. "In other jurisdictions, in which workmen's compensation acts have no provision with respect to interest, the general interest statute has been applied. . . . We have been referred to and have found no case inconsistent with this practice." *P.* 925 of the latter opinion. The general interest statute in this state that is applicable is R. L., c. 396, *s.* 1. Accordingly, the plaintiff is entitled to interest from the date of the award only. Although the case of *Blodgett* v. *Park*, 76 N. H. 435, 437, is for debt to recover a forfeiture rather than a petition for workmen's compensation, the following language seems to be in point: "The statute which gives this action purports to limit the amount of the recovery; consequently, the test to determine whether the plaintiff is entitled to interest from the time the trees were cut until the verdict is to inquire whether the legislature intended him to have it. . . . If it had intended to give him interest as well as five times the value of the trees, it is probable it would have used apt words to express its intention; and as it failed to use them, it must be held that the injured person is not entitled to interest."

*Exceptions overruled.*

All concurred.